# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ALLEN RAINWATER,<br><br>Plaintiff,<br><br>v.<br><br>PAM AHLIN, et al.,<br><br>Defendants. | Case No. 1:18-cv-00049-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(ECF Nos. 5, 13)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff John Allen Rainwater ("Plaintiff"), a civil detainee, is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This matter was referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court, having reviewed the record, finds this matter suitable for decision without oral argument. See Local Rule 230(g).

## I.

## PROCEDURAL HISTORY

Plaintiff filed a complaint in this action on January 11, 2018, alleging he was being held in punitive conditions and his constitutional rights were violated due to being deprived of access to the internet and electronic devices. (ECF No. 1.) On January 26, 2018, Plaintiff filed a motion for a temporary restraining order. (ECF No. 5.) On February 15, 2018, Plaintiff's complaint was screened by the magistrate judge and Plaintiff was ordered to either file an amended complaint or

1

notify the court that he was willing to proceed on the claims found to be cognizable within thirty days. (ECF No. 6.) Plaintiff filed two motions for injunctive relief on February 15, 2018 seeking an order allowing civil detainees to file documents electronically, access to other civil detainees to assist with legal matters, a postage machine in his unit, and access to the law library and a copy machine. (ECF Nos. 8, 9.)

On February 16, 2018, the magistrate judge requested that Defendants Pam Ahlin and Brandon Price ("Defendants") make a special appearance to respond to Plaintiff's motion for a temporary restraining order. (ECF No. 11.) On February 22, 2018, Defendants filed an opposition to the motion for a temporary restraining order. (ECF No. 12.) On March 6, 208, an order issued setting an evidentiary hearing on Plaintiff's motion for a temporary restraining order for March 22, 2018, before Magistrate Judge Michael J. Seng. (ECF No. 13.)

On March 8, 2018, Plaintiff requested a thirty-day extension of time to respond to the screening order which was granted on March 12, 2018. (ECF Nos. 15, 17.) On this same date, Defendants moved to continue the evidentiary hearing. (ECF No. 16.) On March 15, 2018, the magistrate judge vacated the March 22, 2018 hearing date and the hearing was postponed indefinitely. (ECF No. 18.) On March 19, 2018, Plaintiff filed an opposition to Defendants' motion to continue the hearing. (ECF No. 20.) On March 26, 2018, Plaintiff filed an emergency appeal and motion for an emergency temporary restraining order which was forwarded to the Ninth Circuit Court of Appeals. (ECF No. 21, 22.)

On April 3, 2018, the matter was reassigned to Magistrate Judge Stanley A. Boone due to the retirement of Magistrate Judge Michael J. Seng. (ECF No. 24.) On April 6, 2018, findings and recommendations issued recommending denying Plaintiff's requests for injunctive relief filed on February 15, 2018. (ECF No. 25.) On April 16, 2018, the Ninth Circuit granted Plaintiff's request to voluntarily dismiss his appeal and the mandate issued. (ECF No. 26.) On this same date, Plaintiff filed a second request for an extension of time to file an amended complaint which was granted on April 18, 2018. (ECF No. 27.) On May 7, 2018, Plaintiff filed a first amended complaint. (ECF No. 29.)

///

## II.

## LEGAL STANDARD

"A temporary restraining order is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." Whitman v. Hawaiian Tug and Barge Corp./Young Bros. Ltd. Salaried Pension Plan, 27 F.Supp.2d 1225, 1228 (D. Haw. 1998). The factors considered for issuing a temporary restraining order are the same as the standards for issuing a preliminary injunction. Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008); Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7(9th Cir. 2001).

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). In Winter, the Supreme Court held that "[a] court may grant a preliminary injunction only if the plaintiff establishes four elements: (1) likelihood of success on the merits; (2) likelihood of suffering irreparable harm absent a preliminary injunction; (3) the balance of equities tips in plaintiff's favor; and (4) injunctive relief is in the public interest." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015); Leigh v. Salazar, 677 F.3d 892, 896 (2012). "To receive a preliminary injunction, [a plaintiff is] required to show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." In re Focus Media Inc., 387 F.3d 1077, 1085 (9th Cir. 2004) (quoting Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir.1999)). "These standards 'are not separate tests but the outer reaches of a single continuum.' " Stuhlbarg Int'l Sales Co., 240 F.3d at 840 (quoting International Jensen, Inc. v. Metrosound U.S.A., 4 F.3d 819, 822 (9th Cir.1993)). An injunction may only be awarded upon a *clear showing* that the plaintiff is entitled to relief. Winter, 555 U.S. at 22 (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)) (emphasis added).

## III.

## DISCUSSION

Plaintiff seeks an order allowing him to keep electronic devices that store memory, DVDs,

CDs, and games with memory storage devices, DVD players, and MP3 players. (ECF No. 5 at 1.[1]) Plaintiff contends that he will suffer irreparable harm and injury if his electronic devices and items are confiscated pursuant to Cal. Code Regs. tit. 9, § 4350. (Id. at 1-2.) Plaintiff argues that to seize his devices the defendants must have probable cause that he has done the acts that create the risk addressed by the regulation. (ECF No. 5 at 3.) Plaintiff further argues that the defendants have enacted the regulation without proof or evidence. (Id. at 5.)

Plaintiff has accumulated a palm pilot, two Hiteker android tablets, PSP, six "My Passport TB", two Seagate 5 TB expansion disk top drives, expansion cards, microchips, USB flash drives, hundreds of blank DVDs and CDs, Logitech wireless keyboard and movies, a JLAB and AGPtech Waterproof MP3 headphone, Micca media player, and internal TV recorder. (Id. at 5.) Plaintiff stores approximately 4,000 digital movies, 10,000 MP3s, and possesses about 200 disks that he has accumulated over the past 11 years. (Id.) Plaintiff contends that section 4350 is overbroad and punitive. (Id. at 6.) Plaintiff also alleges that he is being denied access to the courts because the facility was on lock down until at least January 28, 2018. (Id. at 8.) Plaintiff has access to research material in the law library but is unable to meet with other likeminded patients doing legal work. (Id.) Plaintiff cannot make a mail out appointment for his legal mail, and use of the unit typewriter is approved one day and denied the next. (Id.) Plaintiff is not able to make copies needed for court. (Id.) Patients are not allowed to make phone calls. (Id.)

Defendants request that the Court deny the motion for a temporary restraining order regarding the implementation of the amendments to section 4350. (ECF No. 12 at 7.) Defendants argue that Plaintiff is not able to establish likelihood of success on the merits because he does not have a constitutional right to possess a computer and related internet capable devices. (Id.) Further, Defendants contend Plaintiff's computers and electronic devices were confiscated as allowed by the regulation the last week of January 2018, so his request is moot. (Id.) Defendants argue that Plaintiff will not suffer harm because he has access to a computer lab to conduct his legal, treatment, and other appropriate activities. (Id.) Defendants further argue that Plaintiff can

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

4

maintain his digital legal material, and will have a means to listen to music and enjoy video games. (Id.) Defendants request that the Court take judicial notice of the Coalinga State Hospital ("CSH") website, Notice of Emergency Amendments and Findings of Emergency Regulations for Electronic Patient Property, California Code of Regulations, the Office of Administrative Law's Approval of the Emergency Regulations, memorandums from Defendant Price to the patients at Coalinga State Hospital, the Fresno County District Attorney's memorandum to staff and patients, the order denying a restraining order in Saint Martin v. Price, No. 1:18-cv-00123-DAD-SKO (E.D. Cal), a letter to Los Angeles Superior Court Judge Bianco, and the Department of State Hospital's ("DSH") published statement of comment/response/rebuttal to the regulation.[2] (ECF No. 12-1.)

### A. Mootness Due to Implementation of the Amendments

Initially, Defendants argue that Plaintiff's request for a temporary restraining order is moot because the amendments to section 4350 have been implemented; and Plaintiff's electronic devices and items have been confiscated. Here, Plaintiff is seeking a temporary restraining order or "any appropriate relief the Court finds proper to halt a potentiol [sic] miscarriage of justice until the court decides on the constitutional claims. . . ." (ECF No. 5 at 9.) Defendants argue that the amended regulation was implemented in January 2018, and all personal computers and related electronic devices were confiscated by January 31, 2018 making Plaintiff's request for injunctive relief moot. (ECF No. 12 at 19-20.)

---

[2] Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The Court will take judicial notice of the California Code of Regulations, rulemaking documents and decisions of the Office of Administrative Law, and the the order denying a restraining order in Saint Martin v. Price, No. 1:18-cv-00123-DAD-SKO (E.D. Cal).

Judicial notice may be taken of records and reports of public records. United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003); Interstate Nat. Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir. 1953); Minor v. FedEx Office & Print Servs., Inc., 78 F.Supp.3d 1021, 1027 (N.D. Cal. 2015). Plaintiff has not opposed the request for judicial notice and the memorandums attached to Defendants' opposition are written on agency letterhead and are not reasonably subject to dispute. Accordingly, the Court takes judicial notice of the memorandums of Defendant Price and the District Attorney's Office which were directed to the civil detainees at CSH.

Courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein. Daniels –Hall v. National Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010). The Court grants the request to take judicial notice of the Coalinga State Hospital website.

1  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). A case becomes moot where there is no reasonable expectation that the alleged violation will reoccur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Los Angeles Cty. v. Davis, 440 U.S. 625, 631 (1979). "Thus, in deciding a mootness issue, the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief." Sea-Land Serv., Inc. (Pac. Div.) v. Int'l Longshoremen's & Warehousemen's Union, Locals 13, 63, & 94, 939 F.2d 866, 870 (9th Cir. 1991).

Plaintiff sought a temporary restraining order to prevent his electronic devices from being confiscated due to the amendments to section 4350. While Plaintiff's devices have now been confiscated, it cannot be said that the alleged violation will not reoccur. Plaintiff is still detained at CSH and were he to attempt to obtain one of the items prohibited by the amendments to section 4350 he would be precluded from possessing them by the regulation.

Further, the effects of the amendment to section 4350 have not been eradicated, rather Plaintiff is subjected to the specific conditions that he alleged violated his constitutional rights, the confiscation of his electronic devices. While Defendants argue that the action is moot due to the confiscation of Plaintiff's electronic devices, relief remains available should the Court find that Plaintiff has met his burden of making a clear showing that he is entitled to relief. For example, the Court could enjoin DSH from enforcing the regulation. The Court finds that Plaintiff's request for injunctive relief is not moot due to the implementation of the amendments to section 4350.

**B.  Likelihood of Success on Merits**

Plaintiff argues that he is likely to succeed on the merits of his claims because the defendants must have probable cause to seize his property and none of the risks claimed are specific to him. Further, Plaintiff contends that the defendants have not been truthful in enacting section 4350 and do not have proof or evidence to support the amendments to the regulation. Plaintiff states that the regulations allow him to keep and use personal property as space permits and any attempt to limit his electronic property is punitive. Finally, Plaintiff contends that he is

1 being denied access to the court because the facility is on lock down and he cannot meet and
2 confer with other likeminded patients doing legal work.

3 Defendants counter that Plaintiff cannot establish a likelihood of success on the merits of his
4 claims because he does not have a constitutional right under the Fourteenth Amendment to possess
5 a computer and related electronic devices. Further, Defendants argue that they have a legitimate
6 interest in institutional security and an obligation to take reasonable measures to guarantee the
7 safety of patients in the institution. Defendants contend it is crucial that SVPs be prevented from
8 procuring child pornography and other illicit materials.

9 In deciding whether a preliminary injunction should issue, the likelihood of success on the
10 merits is the most important factor for the court to consider. Disney Enterprises, Inc. v. VidAngel,
11 Inc., 869 F.3d 848, 856 (9th Cir. 2017). To establish a substantial likelihood of success on the
12 merits, the plaintiff must show "a fair chance of success." In re Focus Media Inc., 387 F.3d at
13 1086 (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir.1988)).
14 "[O]nce the moving party has carried its burden of showing a likelihood of success on the merits,
15 the burden shifts to the non-moving party to show a likelihood that its affirmative defense will
16 succeed." In re Focus Media Inc., 387 F.3d at 1086 (quoting Perfect 10, Inc. v. Amazon.com, Inc.,
17 508 F.3d 1146, 1158 (9th Cir. 2007)). When a plaintiff has failed to show likelihood of success on
18 the merits, the Court need not consider the remaining factors. Garcia, 786 F.3d at 740. Here, the
19 Court finds that Plaintiff has not shown a likelihood of success on the merits of his claims.

20     1.    <u>Fourteenth Amendment Claims</u>

21 To determine whether conditions of confinement of civilly committed individuals have
22 been violated, courts look to the substantive due process clause of the Fourteenth Amendment.
23 Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982); Jones v. Blanas, 393 F.3d 918, 931-32 (9th
24 Cir. 2004). States are thus required "to provide civilly-committed persons with access to mental
25 health treatment that gives them a realistic opportunity to be cured and released," and to provide
26 "more considerate treatment and conditions of confinement than criminals whose conditions of
27 confinement are designed to punish." Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000)
28 (citations omitted).

1. Although civilly detained persons must be afforded more considerate treatment and conditions of confinement than criminals, where specific standards are lacking, courts may look to decisions defining the constitutional rights of prisoners to establish a floor for the constitutional rights of persons detained under a civil commitment scheme, Padilla v. Yoo, 678 F.3d 748, 759 (9th Cir. 2012) (citing Hydrick v. Hunter, 500 F.3d 978, 989 (9th Cir. 2007), vacated and remanded on other grounds by 556 U.S. 1256 (2009), and may borrow Eighth Amendment standards to do so, Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir. 1991), abrogated on other grounds by 511 U.S. 825 (1994). But the conditions under which civil detainees are held cannot be more harsh than those under which prisoners are detained except where the statute itself creates a relevant difference. Hydrick, 500 F.3d at 989 n.7.

The Due Process Clause requires that the nature and duration of the civil commitment must bear some reasonable relation to the purpose for which the individual is committed. Jones, 393 F.3d at 931. However, civilly detained individuals can be subject to restrictions that have a legitimate, non-punitive government purpose and that do not appear to be excessive in relation to that purpose. Bell v. Wolfish ("Wolfish"), 441 U.S. 520, 535 (1979). "A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a 'least restrictive alternative.' " Valdez v. Rosenbalm, 302 F.3d 1039, 1046 (9th Cir. 2002) (citations omitted). The only question is whether the defendants might reasonably have thought that the policy would advance its interests. Id.

   a.   **Punitive Nature of Section 4350**

Plaintiff contends that section 4350 is punitive in nature because it subjects him to conditions similar to those serving a punitive sentence at CSH and are more restrictive than those that he was subjected to while he was incarcerated in the California Department of Corrections and Rehabilitation ("CDCR"). Under Ninth Circuit precedent, "a restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to [its non-punitive] purpose,' " or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods[.]" Jones, 393 F.3d at 934 (citations omitted). "[A] presumption of punitive conditions

arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment." Id. This presumption can be rebutted by the defendants explaining a legitimate, non-punitive purpose for the conditions imposed. Id.

Plaintiff is detained as a Sexually Violent Predator ("SVP") pursuant to the Sexually Violent Predators Act ("SVPA"). An SVP is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1). The SVPA authorizes the involuntary civil commitment of a person who has completed a prison term, but has been given a "full evaluation" and found to be a SVP. Reilly v. Superior Court, 57 Cal.4th 641, 646 (2013). The purpose of the SVPA is "'to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders." State Dep't of State Hosps. v. Superior Court, 61 Cal.4th 339, 344 (2015) (quoting People v. McKee, 47 Cal.4th 1172, 1203 (2010)). "[SVPs] are involuntarily committed because their mental disease makes them dangerous to others." Seaton v. Mayberg, 610 F.3d 530, 540 (9th Cir. 2010).

Pursuant to the SVPA, an SVP who is committed to a secure facility for mental health treatment shall be placed at CSH absent unique circumstances. Cal. Welf. & Inst. Code, § 6600.05(a). "Placement at CSH is sufficiently analogous to an inmate's incarceration in prison, which 'by definition . . . [is a] place[ ] of involuntary confinement of persons who have a demonstrated proclivity for anti-social criminal, and often violent, conduct [.]" People v. Golden, 19 Cal.App.5th 905, 912 (2017), review denied (Apr. 18, 2018) (quoting Hudson v. Palmer, 468 U.S. 517, 526 (1984)).

Although inmates retain certain rights that does not mean that their rights are not subject to restrictions and limitations. Wolfish, 441 U.S. at 545. Lawful incarceration brings with it the withdrawal or limitation of many privileges and rights that are justified by considerations of the penal system. Id. at 546. "There must be a "mutual accommodation between institutional needs

1  and objectives and the provisions of the Constitution that are of general application." Id. (quoting
2  Wolff v. McDonnell, 418 U.S. 539, 566 (1974)). This principle applies equally to pretrial
3  detainees and pretrial detainees do not possess the full range of freedoms as an unincarcerated
4  individual. Wolfish, 441 U.S. at 546. "[M]aintaining institutional security and preserving internal
5  order and discipline are essential goals that may require limitation or retraction of the retained
6  constitutional rights of both convicted prisoners and pretrial detainees." Id.

7  Defendants present evidence that detainees have used personal computers and other
8  electronic devices to download, store, and distribute child pornography at CSH. (Decl. of Brandon
9  Price ("Price Decl.") ¶ 4, ECF No. 12-2.) The Department of Police Services at CSH has been
10 actively engaged in locating electronic devices that are being used for this illicit activity. (Id. at 5.)
11 Despite arrests and prosecution by the Fresno County District Attorney's Office, detainees
12 continue to use personal computers and electronic devices for this illicit activity. (Id. at ¶¶ 5-6.)
13 Detainees have even challenged the searches and seizures when child pornography is found on
14 their computers. (Id. at ¶ 6.)

15 The DSH has determined that the amendment to section 4350 is necessary to protect the
16 public, specifically victims of child pornography. (Price Decl. ¶ 8.) Child pornography is a unique
17 crime since the victim is re-victimized each time the image of the victim is viewed. (Id.) The
18 DSH is attempting to prevent this re-victimization through the adoption and implementation of the
19 emergency regulation. (Id.) The amendment of section 4350 responds to the increased complexity
20 of technological devices available to patients and their continued use of such devices for the
21 criminal activity of downloading, storing, and distributing child pornography. (Id. at ¶ 9.)

22 One of the missions of CSH is to stop the cycle of child abuse by treating SVPs until they
23 are sufficiently rehabilitated to return to the community. (Id. at ¶ 10.) The amendments of section
24 4350 serve this mission by preventing the victimization and re-victimization of children through
25 the use of personal computers and other electronic devices for these illicit activities. (Id.)
26 Detainees have used personal computers and other electronic devices to download, store, and
27 distribute child pornography at CSH. (Id. at ¶ 4.) Permitting unsupervised digital storage,
28 viewing, and transfer is feeding these illegal activities. (ECF No. 12-2 at 22.)

Although Plaintiff alleges that section 4350 is punitive in nature because it is more restrictive than the conditions imposed on individuals incarcerated in the CDCR, Plaintiff is not being held under conditions designed for criminal detention. Plaintiff is an SVP who has been found to be likely to engage in sexually violent criminal behavior and is detained for the purpose of receiving mental health treatment until he has been sufficiently rehabilitated to be able to return to the community. Further, Defendants have implemented section 4350 to protect the victims of child pornography from re-victimization which continues to be occurring at CSH despite the DSH's efforts to locate and prosecute those involved in such illegal activity.

As CSH has a legitimate interest in preventing illegal activity, maintaining institutional security, and preserving internal order and discipline, Wolfish, 441 U.S. at 546, the Court finds that Plaintiff has not demonstrated that he is likely to prevail on the claim that section 4350 is punitive in nature.

### b. Challenge to the regulation as over broad

While unclear, Plaintiff appears to allege that the defendants have not proven that the devices that will be confiscated will serve the purpose of the reasons provided for the amendment to section 4350.[3] Plaintiff contends that DVD players, factory discs, radios, and MP3 players have nothing to do with the stated regulations. However, section 4350 itself provides that commercially produced CDs and DVDs and players without internet access will be permitted and patients will have access to digital media on a supervised basis. (Notice of Approval of Emergency Regulatory Action, ECF No. 12-2 at 47; Price Decl. ¶ 19.) Patients can purchase and possess a music player, if the device does not have internal storage capabilities, recording capabilities, or internet access. (Id. at ¶ 20.)

As technology advances it has become easier for patients to engage in criminal activity and harder for criminal activity to be detected. (Price Decl. ¶ 4.) Memory devices as small as 1 GB

---

[3] Plaintiff argues that he has a right to "Truth-in-Evidence" that has not been adhered to in enacting section 4350. It is unclear what "evidence" Plaintiff contends is without proof. Plaintiff's complaint itself demonstrates that the illegal activity which the defendants seek to address by the amendments to section 4350 is occurring. (Compl. 13-14, 17; Decl. of Jonathan A. Rainwater ¶¶ 3, 16, 17, 18, 19, ECF No. 1.) Further, in 2017, DSH made eleven arrests regarding child pornography. (Notice of Findings of Emergency Regulations for Rule Making 3, ECF No. 12-2 at 19.)

11

1  have the capacity to store downloadable software that allows copying of materials through other
2  electronic devices. (ECF No. 12-2 at 20.) While gaming devices that are internet disabled were
3  previously permitted, many recent gaming devices contain accessible data storage capabilities
4  allowing patients to download illegal material and software. (Id.) These devices also allow non-
5  proprietary CDs and DVDs for transfer and distribution of images or receipt and download of
6  images. (Id.) The ability to burn DVDs and CDs permits the ability to distribute illegal images
7  and communications. (Id.) Patients will be permitted to own CDs and DVDs provided by the
8  manufacturer. (Id.)

Plaintiff contends that restriction of DVDs, CDs and players do not serve the purpose of the regulation. The objective of the amendments is to expand prohibitions against the possession of digital memory devices and certain electronic devices and to provide uniform prohibitions statewide at each DSH hospital. (ECF No. 12-2 at 24.) This will better serve staff and patients by minimizing threats to safety and security and better serve the patients by providing a more therapeutic inpatient environment by better controlling triggers, stimulants, and temptations. (Id.) This has been determined to be necessary to protect the public and particularly the victims of child pornography. (Id. at 18.) The restriction of the devices Plaintiff is challenging is related to the purposes served by the regulation because these are the types of devices and items that have been found to allow access to and dissemination of child pornography.

Plaintiff has not demonstrated that he is likely to prevail on his claim that section 4350 is overbroad by prohibiting items that have memory storage capability or are able to access the internet as these are the types of devices that would enable a patient to access and distribute child pornography which the regulation is enacted to prevent.

**c.  Limitation of Property in Possession**

Plaintiff also contends that the regulation is punitive because it limits the number of DVDs, CDs, DVD players, radios, and MP3 plyers that a patient may possess. Plaintiff will only be allowed to have in his possession a combination of 30 DVDs and CDs. (ECF No. 5 at 5-6.) Defendants counter that Plaintiff does not have a constitutional right to possess unlimited amounts of personal property. Defendants contend that prior to the implementation of the amended

12

1  regulation, four of the five DSH hospitals limited patients to thirty discs.

2  Simply because inmates retain certain rights does not mean that their rights are not subject to restrictions and limitations. Wolfish, 441 U.S. at 545. Lawful incarceration brings with it the withdrawal or limitation of many privileges and rights that are justified by considerations of the penal system. Id. at 546. "There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id. (quoting Wolff, 418 U.S. at 566). This principle applies equally to pretrial detainees and pretrial detainees do not possess the full range of freedoms as an unincarcerated individual. Wolfish, 441 U.S. at 546. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Id.

Here, while Plaintiff may only have 30 CDs or DVDs in his room, the regulation provides that he may store additional manufactured and unmodified CDs or DVDs in off-unit storage. The California Code of Regulations provides that Non-LPS patients have the right to keep and use personal possessions as space permits, except items that are designated as contraband by the facility. Cal. Code Regs. tit. 9, § 884(b)(1). However, the hospital can deny such rights for good cause, which exists when the facility director determines that the exercise of the right would compromise the safety and security of the facility. Cal. Code Regs. tit. 9, § (c)(3). Currently, four of the five hospitals limit the disks a patient may have in his room to thirty. (ECF No. 12-2 at 91.) The imposition of this limitation is to make this restriction universal across all hospitals. (Id.)

While Plaintiff is limited to having thirty DVDs or CDs in his possession at one time, he may keep additional CDs and DVDs in off unit storage. The facility has a legitimate interest in managing the amount of property that a detainee has in his housing unit to ensure the safety and security of the staff and other detainees. The Court finds that Plaintiff is not likely to prevail on his claim that limiting him to having thirty DVDs or CDs in his housing unit violates the Fourteenth Amendment.

2.  First Amendment Claim

Plaintiff alleges that his right to access the Court is infringed because he has been unable to

13

1  make mail out appointments, confer with other likeminded patients regarding litigation, cannot
2  make copies for the Court, use of the telephone has been restricted, and his use of a typewriter is
3  inconsistent.

4  The Constitution guarantees detained people, including civil detainees, meaningful access to
5  the courts. Bounds v. Smith, 430 U.S. 817, 822 (1977) (prisoners); Hydrick, 500 F.3d at 990 (civil
6  detainees); Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995) ("right of access [to the courts] is
7  guaranteed to people institutionalized in a state mental hospital.)  Detainees and prisoners have the
8  right to pursue claims that have a reasonable basis in law or fact without active interference by
9  prison officials.  See Silva v. Di Vittorio, 658 F.3d 1090, 1103-04 (9th Cir. 2011) (finding that
10 repeatedly transferring the plaintiff to different prisons and seizing and withholding all his legal
11 files constituted active interference) overruled on other grounds by Coleman v. Tollefson, 135
12 S.Ct. 1759 (2015); see also Jones, 393 F.3d at 936 (applying this standard to a detainee awaiting
13 civil commitment proceedings).  This forbids state actors from erecting barriers that impede the
14 right of access to the courts of incarcerated persons.  Silva, 658 F.3d at 1102 (internal quotations
15 omitted).  However, to state a colorable claim for denial of access to the courts, Plaintiff must
16 allege that he suffered an actual injury in the pursuit of the litigation of direct criminal appeals,
17 habeas petitions, and civil rights actions.  Lewis v. Casey, 518 U.S. 343, 351 (1996).  "Actual
18 injury" means a "specific instance in which an inmate was actually denied access to the courts."
19 Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989) overruled on other grounds by Lewis, 518
20 U.S. at 350.  Similarly, a prisoner claiming that his right of access to the courts has been violated
21 due to inadequate library access must show that (1) access was so limited as to be unreasonable;
22 and (2) the inadequate access caused actual injury.  Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir.
23 1994).

24 Due to safety and security concerns, the facility was placed on a temporary lockdown on
25 Saturday, January 13, 2018. (Price Decl. ¶ 22.) On January 16, 2018, a procedure was put in place
26 allowing attorney client visitation and phone calls. (Id. at ¶¶ 23, 24.)  The lockdown was reduced
27 to modified programing which ended by February 14, 2018. (Id. at ¶ 26.) Plaintiff has not alleged
28 that he suffered any actual injury in the pursuit of the litigation of a direct criminal appeal, habeas

14

petition, or civil rights action due to the lockdown or modified programing that was in place for approximately one month. The Court finds that Plaintiff has not demonstrated that he is likely to prevail on his First Amendment claim.[4]

### 3. Fourth Amendment Claim

Plaintiff alleges that Defendants are required to have probable cause to seize his property.[5] (ECF No. 5 at 3.) The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. Const. amend. IV. The Fourth Amendment prohibition against unreasonable search and seizure extends to incarcerated prisoners and civil detainees. Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997) (prisoners); Hydrick, 500 F.3d at 993 (civil detainees). However, "the reasonableness of a particular search is determined by reference to the prison context." Hydrick, 500 F.3d at 993 (quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988)). Confinement in a state institution raises concerns similar to those raised by housing pretrial detainees, such as "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." Hydrick, 550 F.3d at 993 (quoting

---

[4] To the extent that Plaintiff seeks relief in his complaint based on denial of access to the internet, an inmate does not retain rights inconsistent with proper incarceration. Overton v. Bazzetta, 539 U.S. 126, 131 (2003). This includes those First Amendment rights that are inconsistent with status as a prisoner or with the legitimate penological objectives of the corrections system. Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (U.S. 1977). For example, the Supreme Court has held that freedom of association is among those rights least compatible with incarceration and some curtailment of the freedom must be expected. Overton, 539 U.S. at 132; see also Pell v. Procunier, 417 U.S. 817, 826 (1974) (limitations on press interviews); Thornburgh v. Abbott, 490 U.S. 401, 405 (1989) (regulation allowing rejection of incoming mail that was determined be detrimental to security, good order or discipline of the institution or if it might facilitate criminal activity); Block v. Rutherford, 468 U.S. 576, 591 (1984) (denial of contact visits).

Further, courts have routinely held that denying a SVP the right to access the internet does not violate the First Amendment. See Telucci v. Withrow, No. 116CV00025JLTPC, 2016 WL 2930629, at *5-6 (E.D. Cal. May 19, 2016); Consiglio v. King, No. 115CV00969BAMPC, 2016 WL 4000001, at *3-4 (E.D. Cal. July 25, 2016); Cerniglia v. Price, No. 117CV00753AWIJLTPC, 2017 WL 4865452, at *4 (E.D. Cal. Oct. 27, 2017); Carmony v. Cty. of Sacramento, No. CIV S-05-1679LKKGGHP, 2008 WL 435343, at *18 (E.D. Cal. Feb. 14, 2008), report and recommendation adopted, No. CIVS051679LKKGGHP, 2008 WL 795101 (E.D. Cal. Mar. 25, 2008), order vacated on denial of reconsideration (Apr. 9, 2008), and report and recommendation adopted, No. CIVS051679LKKGGHP, 2008 WL 2477646 (E.D. Cal. June 17, 2008). Defendants have submitted evidence that the restriction of access to the internet serves the legitimate purpose of addressing the problem of child pornography within the facility.

[5] Pursuant to California Penal Code section 1546.1, consent or probable cause is required to search Plaintiff's electronic devices. However, the question here does not involve the search of electronic devices, but the seizure of the devices as contraband. Further, the devices will not be searched unless the patient consents to such search. (January 18, 2018 Memorandum to all DSH-C Patients, ECF No. 12-2 at 56.)

Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)).

For the Fourth Amendment to apply, there must be a reasonable expectation of privacy in the place that is invaded. Espinosa v. City & Cty. of San Francisco, 598 F.3d 528, 533 (9th Cir. 2010). "The contours of an involuntarily confined civil detainee's right to privacy in his room in a secure treatment facility are unclear, but assuming Plaintiff retains any reasonable expectation of privacy at all in his living area at CSH, it would necessarily be of a diminished scope given Plaintiff's civil confinement." Warrior v. Santiago, No. 116CV01504AWIGSAPC, 2018 WL 827616, at *4 (E.D. Cal. Feb. 12, 2018) (collecting cases); see also Golden, 19 Cal.App.5th at 912 (society could insist that a SVP's expectation of privacy would always yield to the paramount interests in institutional security and rehabilitation). Although Plaintiff is not a convicted criminal, "he is involuntarily serving a civil commitment term at a secure facility; and he is not a free individual with a full panoply of rights." Ryan v. Siqueiros, No. 1:15-CV-01152 DLB PC, 2016 WL 2898450, at *2 (E.D. Cal. May 18, 2016). Although civil detainees are entitled to more considerate treatment and conditions of confinement than prisoners, Youngberg, 457 U.S. at 322, maintaining facility security and effectively managing the institution are unquestionably legitimate, non-punitive government interests, Jones, 393 F.3d at 932.

California courts have found that since "treatment and rehabilitation of SVP's is the purpose of SVPA commitments, it is especially critical for CSH staff to prevent these individuals from procuring child pornography and other illicit material." Golden, 19 Cal.App.5th at 912. While Plaintiff alleges that probable cause is required to seize his property, this Court agrees that an SVP does not have a reasonable expectation of privacy in this dormitory such that probable cause is required to search and seize a civil detainee's property.

4.  <u>Plaintiff has not demonstrated that he is likely to prevail on his claims in this action</u>

Based on the foregoing, Plaintiff has not demonstrated that he is likely to prevail on his claims in this action. Although Plaintiff has failed to show likelihood of success on the merits, the Court shall address the remaining factors.

**C.  Likelihood that Plaintiff Will Suffer Irreparable Harm**

The Court also finds that Plaintiff has not demonstrated that he will suffer irreparable harm

1 absent the issuance of injunctive relief. To receive injunctive relief, Plaintiff must also show that
2 irreparable injury is likely in the absence of an injunction. Herb Reed Enterprises, LLC v. Fla.
3 Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013).

4     Plaintiff argues that the use of flash drives, hard drives, and MP3 players is necessary for
5 participation in treatment. (ECF No. 5 at 2.) Plaintiff also contends that he will no longer have
6 access to his legal documents that are stored electronically. (Id.) However, Defendants have
7 presented evidence that if Plaintiff consents to the search of his digital material, his items may be
8 mailed to a location of his designation or stored at the hospital as long as no illegal materials are
9 found. (Price Decl. ¶¶ 15, 16.) Plaintiff's legal, treatment and other materials can be transferred
10 onto a state owned device that will be accessible to Plaintiff under supervision in the computer lab.
11 (Id. ¶ 16.) There are approximately 25 state owned computers in the computer lab that are
12 available for patient use. (Id. ¶ 19.) These computers are on a stand alone network with no
13 internet connectivity. (Id.)

14     Patients will also have access to devices to play music and games. (Id. ¶ 20.) Plaintiff can
15 purchase a boom box or radio that does not have internal storage capacity or internet access. (Id.)
16 Patients participating in structured music group will be allowed to listen to state purchased iPods
17 with pre-loaded music under supervision. (Id.)

18     Plaintiff has not shown that he will suffer irreparable harm by the implementation of the
19 amendments to section 4350.

20     **D.    Factors Weigh in Favor of Denying Injunctive Relief**

21     Plaintiff does not address balancing the equities or the public interest in granting injunctive
22 relief. Defendants argue that the harm from confiscation of Plaintiff's electronic devices is
23 alleviated because DSH has provided Plaintiff with a manner to retain and access his legal
24 documents, a computer lab for his legal work and treatment, and access to recreational devices.
25 Defendants also argue that confiscation of computers and electronic devices of the civil detainees
26 serves a significant public interest of preventing SVPs from having contact with victims or finding
27 new victims and downloading and disseminating child pornography and other illicit materials.

28     In balancing the equities, "a court must balance the competing claims of injury and must

17

consider the effect on each party of the granting or withholding of the requested relief." N. Cheyenne Tribe v. Norton, 503 F.3d 836, 843–44 (9th Cir. 2007). Here, Plaintiff has not demonstrated that he will suffer any significant injury due to the implementation of section 4350. Defendants have provided Plaintiff with a manner in which to maintain copies of his legal and treatment documents, a computer lab, and Plaintiff can access devices for purposes of entertainment. If an injunction were to be granted, Defendants would be impeded in their mission of stopping the cycle of child abuse and preventing the victimization and re-victimization of children through the illicit activities by use of personal computers and other electronic devices. Further, the continued presence of child pornography at CSH impedes Defendants' purpose of rehabilitation of SVPs.

Finally, there is a strong public interest in protecting victims from re-victimization by the dissemination of child pornography. As Defendants argue, the harm to children and members of the public by allowing ongoing access to child pornography cannot be alleviated or remedied. The significant public interest in preventing the victimization and re-victimization of children through the dissemination of child pornography weighs against granting the relief requested.

**IV.**

**CONCLUSION AND RECOMMENDATION**

For the reasons discussed, the Court finds that Plaintiff has not demonstrated that he is likely to succeed on the merits of his claims or that he will suffer irreparable injury due to the implementation of the amendments to section 4350.

Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's motion for a temporary restraining order be DENIED.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

18

636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 9, 2018**

_____
UNITED STATES MAGISTRATE JUDGE